# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JERMAINE LATWONE HAYNES,

      Petitioner,

                                      Case No. 16-cv-14371

  v.                             Hon. Matthew F. Leitman

SHERMAN CAMPBELL,[1] WARDEN,

      Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

Petitioner Jermaine Latwone Haynes is a state prisoner in the custody of the Michigan Department of Corrections. Haynes filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 on December 14, 2016. (*See* Pet., ECF No. 1.) In the petition, Haynes challenges his state-court convictions for two counts of assault with intent to commit murder, Mich. Comp. Law § 750.83; felon in possession of a firearm, Mich. Comp. Law § 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), Mich. Comp. Law §

---

[1] The Court amends the caption to reflect the name of Petitioner Haynes' current warden. *See* Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

750.227b. (*See id.*)  The convictions arose out of Haynes' shooting of two men – David Owusu and Malik Atkins.

Haynes raises four claims in his petition: (1) insufficient evidence, (2) prosecutorial misconduct, (3) ineffective assistance of trial counsel, and (4) denial of transcripts on appeal. (*See id.*)

The Court has reviewed Haynes' claims and the record and concludes that he is not entitled to federal habeas relief. Accordingly, the Court will **DENY** his petition. The Court will also **DENY** Haynes a certificate of appealability but will **GRANT** him permission to appeal *in forma pauperis*.

## I

The Michigan Court of Appeals summarized the evidence against Haynes as follows:

> The testimony presented at trial included that defendant approached David Owusu before the shooting and made a statement along the lines of: "I want you and your friend to leave off the block or I'm gon' shoot the both of ya'll," "Get off the street or I'm gon' pop you and your friend," or "If you and him don't get off our block, I'm gon' pop both of ya'll." The testimony also indicated that, shortly after defendant verbalized the threat, defendant fired multiple gunshots at Owusu and Malik Atkins using a black semi-automatic handgun while they were riding their bikes down the street.
>
> * * *
>
> At trial, defendant testified to the events that occurred on the day of the incident and the day before the incident . . .

Further, defendant testified about his state of mind during the incident, indicating that he feared for his life when he heard the gunshots and that he was paranoid at the time of the incident.

\* \* \*

Owusu and Atkins both testified that Atkins was unarmed when the incident occurred and that defendant fired gunshots at them as they were riding away from the scene after defendant threatened Owusu. Even though defendant testified that Atkins was armed and approached defendant while reaching for a gun in his waistband, defendant never testified at trial that he was armed, that he needed to defend himself, or that he fired the weapon at Owusu and Atkins. Instead, defendant testified that he ran away when Atkins pulled the gun out of his waistband and hid in an abandoned house.

*People v. Haynes*, 2015 WL 2412359, at *1, *5, *6 (Mich. Ct. App. May 19, 2015).

After Haynes was convicted at trial, he raised four issues on direct appeal. Through his appointed appellate counsel, Haynes claimed that the evidence of intent necessary to support a conviction of assault with intent to murder was insufficient and that he was denied a fair trial due to the prosecutor's improper vouching for witnesses' credibility.

Haynes also raised two issues *pro se* through what is known as a "Standard 4" brief.[2] First, he asserted that his trial counsel was constitutionally ineffective. He cited eight specific theories of ineffective assistance, in which trial counsel failed to

---

[2] Under Michigan law, criminal defendants may file a brief *in propria persona* for claims that they seek to raise on appeal where their appointed appellate counsel does

a. investigate text messages which would have revealed Haynes' state of mind,

b. call two witnesses identified by Haynes,

c. obtain hospital and police records which would have supported Haynes' claim that he feared for his life,

d. impeach the prosecution witness effectively with the witness's inconsistent testimony,

e. present a self-defense theory or question defendant about prior circumstances which contributed to his behavior during the incident,

f. request a jury instruction on felonious assault,

g. introduce mitigating evidence at sentencing, or

h. pursue psychological testing or expert witnesses regarding Haynes' state of mind and culpability.

The second issue that Haynes raised in his Standard 4 brief was that his appellate counsel failed to provide him his trial and sentencing transcripts. Haynes argued that this failure prevented Haynes, in his Standard 4 brief, from citing facts in the record as required by the court rules. (*See* ECF No 8-11, PageID.672.)

---

not include those grounds in their pleadings. *See* Standard 4, Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004) (establishing minimum standards for criminal defense appellate services); *see also Ware v. Harry*, 636 F. Supp. 2d 574, 594 (E.D. Mich. 2008).

The Michigan Court of Appeals affirmed Haynes' convictions. *See Haynes*, 2015 WL 2412359, at *7. The Michigan Supreme Court thereafter denied leave to appeal. *See People v. Haynes*, 871 N.W.2d 191 (Mich. 2015).[3]

In Haynes' timely-filed petition for writ of habeas corpus, he raises the same issues that he argued on his direct appeal.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state-court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3] In the Michigan Supreme Court's order denying leave to appeal, that court granted Haynes' motion to "add matters," permitting the inclusion of a competency evaluation report in his application for leave to appeal. (*See* ECF No. 8-12, PageID.928.)

28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

Haynes first argues that there was insufficient evidence of his intent to kill Owusu and Atkins. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> The testimony presented at trial included that defendant approached David Owusu before the shooting and made a statement along the lines of: "I want you and your friend to leave off the block or I'm gon' shoot the both of ya'll," "Get off the street or I'm gon' pop you and your friend," or "If you and him don't get off our block, I'm gon' pop both of ya'll." The testimony also indicated that, shortly after defendant verbalized the threat, defendant fired multiple gunshots at Owusu and Malik Atkins using a black semi-automatic handgun while they were riding their bikes down the street. Given that minimal circumstantial evidence was sufficient to establish defendant's state of mind, defendant's statement of intent prior to the shooting and defendant's act of firing multiple gunshots at Owusu and Atkins as they rode away from defendant, provided sufficient circumstantial evidence from which the jury could infer an actual intent to kill. Although defendant's recollection of the incident differed from Owusu's and Atkins's accounts, and aspects of

> Owusu's testimony conflicted with his previous
> statements, this Court will not interfere with the trier of
> fact's role of determining the weight of the evidence or the
> credibility of witnesses, and all conflicts in the evidence
> must be resolved in favor of the prosecution. Thus,
> viewing the evidence in the light most favorable to the
> prosecution, there was sufficient evidence presented at
> trial for a reasonable jury to conclude beyond a reasonable
> doubt that defendant fired the gun at Owusu and Atkins
> with an intent to kill.

*Haynes*, 2015 WL 2412359, at *1 (internal citations and punctuation omitted).

Haynes has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. Haynes argues that witness testimony that he shot at Owusu and Atkins from several houses away indicated that he only wanted to frighten them, and therefore his intent to kill was not proven beyond a reasonable doubt. (*See* Pet., ECF No. 1, Page.ID 46-47.) But under *Jackson v. Virginia*, 443 U.S. 307 (1979), the inquiry is not

> whether *it* [the reviewing court] believes that the evidence
> at the trial established guilt beyond a reasonable doubt . . .
> [but] whether, after viewing the evidence in the light most
> favorable to the prosecution, *any* rational trier of fact could
> have found the essential elements of the crime beyond a
> reasonable doubt.

*Id.* at 318–19 (citing *Woodby v. INS*, 385 U.S. 276, 282 (1966); *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original).

Here, Owusu and Atkins testified that Haynes shot at them multiple times as they rode their bikes away from him. And evidence was presented at trial that

Haynes had previously threatened to shoot Owusu and Atkins. Under these circumstances, Haynes has not shown that the Michigan Court of Appeals unreasonably concluded that a rational trier of fact could find that Haynes possessed an intent to kill. Haynes is therefore not entitled to federal habeas relief on this claim.

## B

Haynes next argues that the prosecutor improperly vouched for the credibility of the two complaining witnesses.[4] More specifically, Haynes argues that "[t]he prosecutor, in a move to sway the jury, improperly bolstered the testimony of the two complaining witnesses by stating that he was, personally, very proud of Owusu and Atkins and their truthful testimony (TT, 01/08/2014, 28)." (Pet., ECF No. 1, PageID.48.[5])

The Michigan Court of Appeals considered this claim on direct review and rejected it:

---

[4] Respondent argues that Haynes procedurally defaulted this issue. Where analyzing the merits of a habeas claim "present[s] a more straightforward route for resolving [the] petition," a court need not address the question of procedural default. *Bell v. Jackson*, 379 F. App'x 440, 443 (6th Cir. 2010) (citing 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court chooses that route here.

[5] Haynes presented this argument in a brief before the Michigan Supreme Court, which Haynes attached to his petition. (*See* Pet., ECF No. 1, PageID.48.) In the petition, Haynes adopted the arguments that he presented to that court on this issue. (*See id.*, PageID.9, directing the Court to his Michigan Supreme Court brief).

Allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context. A prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness. However, prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." Additionally, prosecutorial arguments regarding credibility are not improper when based on the evidence, even if couched in terms of belief or disbelief. A prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes.

In light of defendant's conflicting account of the incident, it is evident that the outcome of this case depended on whether the jury believed Owusu's and Atkins's testimony or defendant's testimony. Accordingly, the prosecutor was permitted to comment on Owusu's and Atkins's credibility during her closing argument. Additionally, the prosecutor's statement did not imply that she had any special knowledge, outside of the evidence presented at trial, regarding Owusu's and Atkins's truthfulness. Likewise, there is no indication that the prosecutor put the prestige of the office behind a personal belief of a witness' truthfulness. Thus, the prosecutor's comments were not improper and defendant's claim is without merit.

*Haynes*, 2015 WL 2412359, at *2 (internal citations and punctuation omitted).

Haynes has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. "A prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of

due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). The single comment that Haynes identified comprised a sentence and a half in the prosecutor's entire closing and rebuttal arguments. During those arguments, the prosecutor made other proper comments about how the jury should assess the credibility of the witnesses. On this record, the limited example of arguable vouching by the prosecutor did not "so infect[] the trial" as to deny Haynes his right to due process. Haynes is therefore not entitled to federal habeas relief on this claim.

## C

Haynes next raises eight theories of ineffectiveness of his trial counsel, all of which were adjudicated on the merits and rejected by the state courts during his direct appeal. None entitle him to habeas relief.

## 1

Claims of ineffective assistance of counsel are subject to the two-prong standard described in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show that his counsel's performance was deficient. *See id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

Second, a defendant must show that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. On habeas review, the question is "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.")

## 2

In order to understand Haynes' ineffective assistance claims in context, it is helpful to review Haynes' testimony at trial. He testified as follows:

- The day before the shooting, he got into a fight with a young man named Adrian. The fight related to Adrian's use of Haynes' lawnmower.

- After the confrontation with Adrian, Adrian's father came over to speak with Haynes. They had a productive conversation, and when they were done speaking, Haynes believed that "everything was resolved, everything was fine between [him] and Adrian after that point." (ECF No. 8-8, PageID.554.)

- The next day, as Haynes was returning to his house, he saw Owusu (whose name Haynes did not know at the time), Adrian, and Atkins. Owusu was playing basketball nearby, and Adrian and Atkins were sitting on the porch of Adrian's house.

- Owusu asked Haynes for a cigarette lighter, and Haynes thought that that request was unusual because Atkins had a lit cigarette (and thus must have had a means to light it that he presumably could have shared with Owusu).

- Even though Haynes believed that the request for the lighter was "suspect," he did not think that anything bad was about to happen. (*Id.*, PageID.556.) Instead, he "didn't really pay [any] attention" to Owusu and "just turned around" and began heading into his house. (*Id.*, PageID.555.)

- At that point, Atkins started walking towards Haynes, and Haynes saw Atkins reach into his (Atkins') waistband. Haynes believed that Atkins was "about to shoot me or something because I [saw] him reaching for a gun." (*Id.*, PageID.557.) Then Atkins did pull a gun "all the way out," and when Atkins did so, Haynes began "running." (*Id.*) Haynes "started hearing shots" and he "kept running." (*Id.*) Haynes ran to an abandoned house and, while hiding out at that house, he was "scared" and "paranoid." (*Id.*, PageID.558.)

- Haynes then received phone calls from people who told Haynes that Adrian, Owusu, and Atkins were trying to set Haynes up to be shot.

- Haynes' denied that he had shot Atkins and Owusu with the intent to kill them. (*Id.*, PageID.561.)

**3**

The majority of Haynes' theories of ineffective assistance assert that his trial counsel failed to present Haynes' theory that (1) he acted in self-defense and (2) was "paranoid" and in fear for his life at the time of the incident.

More specifically, Haynes says that his trial counsel failed to:

- Present the defense of self-defense at trial;

- Obtain text messages between Haynes and a woman named Melrose Williams. Haynes says that these messages would have shown that shown that Owusu and his friends "were seeking out [Haynes] with the intent to do him harm." (ECF No. 1, PageID.55);

- Obtain text messages between Haynes and his brother Frederick. Haynes says that these messages would have shown that he "felt his life was in danger from the police." (*Id.*, PageID.57.)

- Call two neighbors of Haynes' as witnesses at trial. Haynes says the witnesses could have "justified [] Haynes' reason for fearing for his life" at the time of the incident. (*Id.*, PageID.58.);

- Obtain hospital and police records related to incidents of violence at the homes of Haynes' neighbors. Haynes says that this evidence would have helped explain why Haynes was in fear for his life at the time of the shooting. (*See id.*, PageID.59-60.); and

- Request psychological testing of Haynes. Haynes says that the testing could have explained "why [Haynes] was hypersensitive" to the circumstances surrounding the incident in question. (*Id.*, PageID.67.)

The Michigan Court of Appeals considered each of these claims on direct review and rejected them. That court did so, in part, because it concluded that a self-defense theory, or a theory that Haynes acted out because he was afraid for his life, would have been inconsistent with Haynes' own version of events that he offered in his trial testimony:

> Even though defendant asserts that he informed defense counsel that he acted in self-defense, it is not evident from the lower court record that defendant actually notified defense counsel of this defense or that defense counsel failed to investigate a self-defense theory. More significantly, the presentation of a theory of self-defense would have been completely inconsistent with the testimony of Owusu, Atkins, *and defendant.* Owusu and Atkins both testified that Atkins was unarmed when the incident occurred and that defendant fired gunshots at them as they were riding away from the scene after defendant threatened Owusu. *Even though defendant testified that Atkins was armed and approached defendant while reaching for a gun in his waistband, defendant never testified at trial that he was armed, that he needed to defend himself, or that he fired the weapon at Owusu and*

> *Atkins. Instead, defendant testified that he ran away when Atkins pulled the gun out of his waistband and hid in an abandoned house.* Although defendant could have raised inconsistent defenses at trial, in order to demonstrate that defense counsel was ineffective, he must rebut the strong presumption that defense counsel's decision to defend defendant by repeatedly attacking the credibility of Owusu and Atkins and offering defendant's testimony as the accurate portrayal of the incident was "sound trial strategy under the circumstances. *Defendant has failed to demonstrate that a decision to forgo a theory of self-defense that was wholly inconsistent with defendant's testimony—and, in fact, would have effectively impeached defendant's testimony—was not sound trial strategy.*

*Haynes*, 2015 WL 2412359, at *6 (internal citations and punctuation omitted; first emphasis in original; second and third emphasis added). *See also id.* at *4 ("[T]here is no indication that the content of the text messages [between Haynes and his brother] provided a substantial defense to defendant's charges or were relevant to the theory of the case presented by the defense at trial"); *id.* at *5 ("[T]he details of the alleged shooting at the home of [Haynes'] neighbor did not have any tendency to make more or less probable a fact of consequence to this action … The documents … could not provide any additional information regarding whether [Haynes] fired a weapon … or whether [Haynes] had an actual intent to kill"); *id.* at *7 ("[T]here is no indication in the record that [Haynes'] purported mental illnesses prevented from

him either appreciating the wrongful nature of his actions or conforming his conduct to the law under either version of the incident offered at trial").[6]

Haynes has not shown that the Michigan Court of Appeals' rejection of his ineffective assistance claims related to his desire to present a defense of self-defense and to present evidence that he was afraid for his life at the time of the incident was contrary to, or an unreasonable application of, clearly established federal law. As that court correctly concluded, Haynes' own trial testimony was inconsistent with the defense of self-defense and the evidence of paranoia that Haynes says his attorney should have presented.

First, Haynes did not testify at trial that he was in any fear or that he was paranoid in the moments leading up to the incident. Instead, he testified that he was *not* concerned by his initial interaction with Owusu (concerning the cigarette lighter request), that he turned to walk away after that initial interaction, and that the first time he felt paranoia was *after* he had been shot at. Thus, evidence that Haynes supposedly felt paranoia before the shooting would not have fit well with his own testimony.

---

[6] The Michigan Court of Appeals rejected each of the individual ineffective assistance claims referenced above related to Haynes' desire to present a defense of self-defense and his claim that he feared for his life at the time of the shooting. *See Haynes*, 2015 WL 2412359, at ** 3-7. For the reasons stated above, Haynes has not shown that any of these rulings were unreasonable.

Second (and more importantly), Haynes' testimony was not consistent with a defense of self-defense or with any evidence attempting to justify a shooting by Haynes. That is because Haynes denied firing any shots and because (as described immediately above) he denied being in fear before the shooting. Indeed, Haynes said that *he* was the target of shots, not the shooter. Thus, evidence of self-defense would have undermined his own testimony.

For all of these reasons, Haynes cannot show that his attorney acted unreasonably in failing to present a defense of self-defense and/or the other evidence identified above concerning Haynes' state of mind at the time of the shooting. Haynes is therefore not entitled to federal habeas relief related to these claims.

**4**

Next, Haynes asserts that his trial counsel failed to impeach Owusu, a prosecution witness, with inconsistent prior testimony. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> [D]efendant argues that his counsel failed to effectively impeach Owusu. In his brief, defendant identifies four statements that defense counsel failed to utilize at trial in order to undermine Owusu's credibility. However, contrary to defendant's arguments, the lower court record indicates that defense counsel impeached Owusu's testimony with his prior inconsistent statements and emphasized the inconsistencies in Owusu's testimony during his closing argument. Therefore, defendant has failed to establish the factual predicate of his claim. Further, the record shows that defense counsel effectively impeached Owusu's testimony, but, despite defense

counsel's efforts, the jury found Owusu's and Atkins's testimony to be more credible than defendant's testimony. The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel.

*Haynes*, 2015 WL 2412359, at \*5 (internal citations and punctuation omitted).

Haynes has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. Haynes' assertion in the petition that his trial counsel failed to impeach Owusu is belied by the record. Counsel impeached Owusu with respect to (1) Owusu's prior statement to police that he did not see the gun that he later described at trial and (2) discrepancies in Owusu's description of the shooter. (*See* 1/7/2014 Trial Tr. ECF No. 8-7, Page.ID 454-55, 459.) Counsel also raised Owusu's inconsistent testimony during closing arguments. (*See* 1/8/2014 Trial Tr. at 35, ECF No. 8-8, Page.ID 579.) Haynes is therefore not entitled to federal habeas relief on this claim.

## 5

Haynes next argues that his trial counsel was ineffective for failing to introduce mitigating circumstances at sentencing. The Michigan Court of Appeals reviewed this claim on direct appeal and rejected it:

Defendant also argues that his counsel was ineffective because he failed to introduce mitigating circumstances at his sentencing which may have resulted in a lesser sentence. This claim is without merit. Defendant provided a lengthy statement at sentencing, during which he explained his perspective on the incident, his belief that

> the young men were waiting to rob him, his concerns that his charges were intensified because of his "bad history with the police in [his] neighborhood," and his belief that the jury should have received a self-defense instruction. Thus, he had ample opportunity to raise the "mitigating circumstances" that he references in his Standard 4 brief without the intercession of his attorney and has failed to establish that his attorney's decision fell below an objective standard of reasonableness.

*Haynes*, 2015 WL 2412359, at *6 (internal citations and punctuation omitted).

Haynes has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. Although trial counsel's remarks at sentencing related to mitigation were brief, counsel did tell the sentencing court that Haynes was "not beyond rehabilitation" and "has the love and support of his mother." (Sent. Tr., ECF No. 21-2, Page.ID 993.) And as the state court observed, Haynes also allocuted at length and thus had the opportunity to raise any issues he felt lacking in counsel's presentation. (*See id*., Page.ID 994-996.) Haynes is therefore not entitled to federal habeas relief on this claim.

**6**

Haynes finally argues that his trial counsel was ineffective when counsel failed to seek a jury instruction for felonious assault as a lesser-included offense to assault with intent to commit murder. The Michigan Court of Appeals considered this argument on direct review and rejected it:

Next, defendant argues that his counsel was ineffective for failing to request a jury instruction on felonious assault. However, MCL 768.32(1) precludes a jury instruction on an uncharged lesser cognate offense. *People v. Jones,* 497 Mich. 155, 164; 860 NW2d 112 (2014). And felonious assault is a cognate lesser offense of assault with intent to commit murder. *People v. Otterbridge,* 477 Mich. 875; 721 NW2d 595 (2006). Accordingly, this claim is without merit.

*Haynes*, 2015 WL 2412359, at *6.

Haynes has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. Attorneys are not ineffective under *Strickland* when they fail to raise a frivolous argument or one that is futile. *See, e.g.*, *Holmes v. United States*, 281 F. App'x 475, 479 (6th Cir. 2008) (citing *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999)). Here, under Michigan law, felonious assault is a cognate lesser offense of assault with intent to commit murder. *See People v. Otterbridge*, 721 N.W.2d 595 (Mich. 2006). And the governing jury instruction on lesser offenses prohibits "consideration of cognate lesser offenses." *People v. Jones*, 497 Mich. 155, 164 (2014). As a result, any request for the felonious assault instruction would have failed. Haynes' trial counsel was therefore not ineffective in not seeking the instruction, and Haynes is not entitled to federal habeas relief on this claim.

**D**

The final issue that Haynes raises in the Petition is that he should have been permitted to file an amended Standard 4 *pro se* brief with the Michigan Court of Appeals because he was denied trial and sentencing transcripts by his appointed appellate attorney. The Michigan Court of Appeals did not address this issue directly but it did deny Haynes' related motions to remand and for an evidentiary hearing in which he sought to establish an alternative testimonial record.

Haynes is not entitled to federal habeas relief on this claim. Neither the Sixth Amendment nor the Due Process Clause of the Fourteenth Amendment guarantee a defendant's right to self-representation on direct appeal from a criminal conviction. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 161, 163 (2000). Accordingly, a defendant appealing a conviction is not constitutionally entitled to submit a *pro se* appellate brief in addition to a brief filed by appellate counsel. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000).

The State of Michigan may choose to permit defendants to submit *pro se* briefs, *see Martinez*, 528 U.S. at 163, as Standard 4 provides, but no part of the federal constitution protects a defendant's right to do so. Because Haynes had no constitutional right to file his Standard 4 brief, the constitution mandates neither the provision of transcripts for the purpose of drafting that brief, nor the opportunity to file an amended brief.

**E**

In order to appeal the Court's decision, Haynes must obtain a certificate of appealability, which requires a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, an applicant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Haynes has failed to demonstrate entitlement to federal habeas relief with respect to any of his claims because they are all devoid of merit. Therefore, the Court **DENIES** Haynes a certificate of appealability.

Although this Court declines to issue Haynes a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in

good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Haynes' claims, an appeal could be taken in good faith. Therefore, Haynes may proceed *in forma pauperis* on appeal.

V

Accordingly, for the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus (ECF No. 1), (2) **DENIES** Haynes a certificate of appealability, and (3) **GRANTS** Haynes permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 3, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 3, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764